1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11  TYUN SOCKEE DODSON,              )   Civil No. 07cv0869 W(RBB)
                                     )
12              Plaintiff,           )   **REPORT AND RECOMMENDATION RE:**
                                     )   **GRANTING IN PART AND DENYING**
13  v.                               )   **IN PART MOTION TO DISMISS**
                                     )   **[DOC. NO. 25] AND ORDER**
14  J. ROCHA, Correctional Officer;  )   **DENYING MOTION FOR APPOINTMENT**
    C.J. SWEARINGEN, Correctional    )   **OF COUNSEL [DOC. NO. 41]**
15  Officer; V. CANADA, Correctional )
    Officer; M. TAMAYO, Correctional )
16  Officer; E. SILVA, Correctional  )
    Sergeant; H. MORA, JR.,          )
17  Correctional Officer; ARANI,     )
    Correctional Officer; GALVAN,    )
18  Correctional Officer; D. BELL,   )
    Medical Technician Assistant;    )
19  BARRIOS, Medical Technician      )
    Assistant; RUAN, Correctional    )
20  Lieutenant; R. NELSON,           )
    Correctional Lieutenant,         )
21  SANTIAGO, Medical Doctor; DOES   )
    1-20,                            )
22                                   )
                Defendants.          )
23  _____ )

24       Plaintiff Tyun Sockee Dodson, a state prisoner proceeding pro

25  se and in forma pauperis, filed a civil rights complaint [doc. no.

26  1] on May 14, 2007, pursuant to 42 U.S.C. § 1983.  Dodson alleges:

27  (1) Defendants violated the Eighth Amendment by inflicting cruel

28  and unusual punishment; (2) Defendants displayed deliberate

indifference to both his safety and to a serious medical need in violation of the Eighth; (3) Defendants Silva and Ruan prohibited him from freely discussing the incident giving rise to this claim, in violation of the First Amendment; (4) Defendant Santiago was negligent in administering medical treatment; (5) Defendant Nelson was deliberately indifferent to his serious medical needs; (6) various Doe Defendants inflicted cruel and unusual punishment by placing Dodson in administrative segregation; and (7) he suffered emotional, mental, and psychological injuries as a result of the physical injuries. (Compl. 6-23.)[1]

On October 24, 2007, Defendants Bell, Canada, Galvan, Nelson, Rocha, Santiago, Silva, Swearingen and Tamayo filed a Motion to Dismiss the Complaint [doc. no. 25] with a Memorandum of Points and Authorities and a Declaration of D. Jones. On January 7, 2008, Defendant Barrios filed a Joinder to Defendants' Motion to Dismiss [doc. no. 32]. Defendants Arani and Mora also filed a Joinder to Defendants' Motion to Dismiss [doc. no. 39] on February 15, 2008.

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim under the First and Eighth Amendments, as well as for failure to state claims of medical negligence and intentional infliction of emotional distress. (Mot. to Dismiss 1.) Plaintiff submitted an Opposition to Defendants' Motion [doc. no. 34], which was filed nunc pro tunc to December 14, 2007. On January 11, 2008, Defendants submitted a Reply to Plaintiff's Opposition [doc. no. 37]. Dodson also submitted a

---

[1] For convenience, all page numbers in the Complaint refer to the electronic pagination supplied by the electronic case filing system.

07cv0869 W (RBB)

Notice of Motion and Motion for Appointment of Counsel [doc. no. 41], filed nunc pro tunc to February 25, 2008.

Defendants' Motion to Dismiss and Plaintiff's Motion for Appointment of Counsel are suitable for decision without oral argument. See S.D. Cal. Civ. L.R. 7.1(d)(1). For the reasons set forth below, the district court should **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss, and this Court **DENIES** Plaintiff's Motion for Appointment of Counsel.

## I. FACTUAL BACKGROUND

Dodson is an inmate currently incarcerated at Corcoran State Prison. (Notice of Change of Address [doc. no. 29].) On July 30, 2005, while incarcerated at Calipatria State Prison, he was allegedly beaten by several correctional officers. (Compl. 1, 6-11.)

The altercation began when Defendant Rocha entered Plaintiff's cell to collect his prior cellmate's property. (Compl. 6.) After removing the property, Rocha reentered the cell holding his baton. (Id.) Dodson alleges Rocha was angry that Plaintiff's mother lodged a complaint against him, and Rocha said, "You wanna cry to your mommy, I'll give you something to cry about." (Id.) Dodson replied by saying, "Whatever." (Id.) Rocha then swung his baton at Plaintiff, who lunged forward and struck Rocha in the face with his fist. (Id.)

The alarm was triggered, and responding officers arrived. (Id.) Defendant Swearingen entered the cell and sprayed Dodson with pepper spray. (Id.) Dodson slipped and fell to the ground. (Id.) Defendant Mora placed him in handcuffs. (Id.) Defendants Swearingen, Canada, and Tamayo then beat Plaintiff with their

batons while Dodson was lying on his stomach handcuffed behind his back.  (_Id._)  Dodson crawled under his bunk after a blow to the head by Tamayo.  (_Id._ at 7.)  Tamayo then sat on Plaintiff's legs and twisted his left foot.  (_Id._)  Canada struck Dodson's shin with his baton.  (_Id._)  Rocha grabbed Plaintiff's left pinky and ring fingers and beat his left hand with a baton.  (_Id._)  Defendant Silva placed his knee at the base of Dodson's neck, covered his nose and mouth with plastic, and tried to break his neck or suffocate him.  (_Id._)

The commotion caused other inmates in the building to yell for the correctional officers to stop the abuse, although the view into Dodson's cell was blocked by a "green wall" of officers.  (_Id._)  Dodson was escorted from his cell by Canada and Tamayo.  (_Id._ at 8.)  One of the other inmates asked, "You alright Sockee?" Defendant Canada told Plaintiff, "Tell him you're alright!", (_id._) but Dodson said nothing.  (_Id._)

Dodson was escorted outside in the dark where numerous officers were present.  (_Id._)  Plaintiff had heard rumors that an inmate was beaten in front of the building, and fearing the worst, he began searching for the officers' name tags.  (_Id._)  Dodson saw Defendant Arani with a "6 shooter block gun."  (_Id._)  Plaintiff asked him, "Arani, you gone' [sic] let them do this to me man?" (_Id._)  Arani replied, "It's too late now man!"  (_Id._)  Dodson also saw Defendant Galvan, who would not make eye contact with Plaintiff and quickly walked away.  (_Id._)

Canada and Tamayo escorted Dodson to the Medical Technician Assistant (MTA)'s office.  (_Id._ at 8-9.)  Plaintiff noticed Defendant Silva speaking with Defendant Ruan.  (_Id._ at 9.)  Once

4

Plaintiff was inside the MTA office holding cage, Silva entered the
cage and told Defendants Bell and Barrios to "clear out," which
they did.  (Id.)  Silva then asked, "You wanna hit my officers huh?
You piece of shit! . . . Huh?  You little bitch!"  (Id.)  Dodson
responded, "He hit me first."  (Id.)  Silva then struck Plaintiff
in the face, causing him to lose consciousness.  (Id.)  When he
regained consciousness, Canada and Tamayo were kicking him as he
lay on the floor.  (Id.)  Canada and Tamayo then pulled Dodson up
and held him while Silva punched him in the stomach.  (Id.)  Silva
said, "You're not so tough now are you?  You little bitch!"  (Id.)
Silva then spit on Dodson.  (Id.)

Plaintiff was stripped and searched for contraband; then he
was handcuffed by Defendant Tamayo.  (Id. at 10.)  Defendants Bell
and Barrios returned and started attending to Plaintiff's more
serious wounds.  (Id.)  Bell and Barrios documented some, but not
all, of Dodson's injuries.  (Id.)  Silva then entered the building
and said to Dodson, "It was all your fault and I better not hear
anything different!"  (Id.)  Silva motioned to Defendant Ruan, who
stopped short of the entrance and said, "Let me hear it."  (Id.)
Dodson responded, "It was all my fault."  (Id. at 10-11.)

Plaintiff was taken to the Outpatient Housing Unit (OHU).
(Id. at 14.)  Defendant Santiago, a doctor, and an unnamed nurse
treated him.  (Id.)  Santiago examined Dodson's wounds and
determined that the wounds to his hand needed to be sutured.  (Id.)
When Santiago asked Dodson how he got the wounds, Officer Rowe
yelled, "This is the bastard that knocked out the officer's teeth
you just saw in the other room!"  (Id.)  Plaintiff had cut his hand
on Defendant Rocha's teeth.  (Id.)  Santiago sutured the wound,

ignoring the advice of the unnamed nurse not to suture it because it was a teeth wound. (Id.) The nurse gave Dodson a tetanus shot and said that he would need antibiotics. (Id.)

Dodson was then escorted to a shower for pepper spray decontamination. (Id. at 15.) While he was in the shower, Defendant Nelson arrived to place Plaintiff in Administrative Segregation ("Ad-Seg"). (Id.) At the same time, the nurse arrived to give Dodson his antibiotics and began instructing him on how to take them. (Id.) Nelson yelled, "Get the fuck out of here! He doesn't want your fucking meds!" (Id.) Nelson then took the pills and threw them to the ground at the nurse's feet. (Id.) When Plaintiff asked, "What's up with my antibiotics?" Nelson kicked the pills, causing them to go "all over the place." (Id.)

Dodson was escorted to Ad-Seg, where he was held without a mattress, blanket, eating utensils, or toiletries for two days. (Id. at 15-16.) Three days after the incident, Plaintiff was examined by Defendant Bell for complaints of a throbbing hand. (Id. at 16.) That evening, Plaintiff had cold chills and was sweating all night. (Id.) Dodson was examined the next day by Dr. Levine, who diagnosed him with an infection and told Plaintiff that the wound should never have been sutured. (Id.) Dr. Levine milked the wound and admitted Dodson to the OHU, where he received intravenous medication for approximately four days. (Id.)

**II. LEGAL STANDARDS APPLICABLE TO 12(b)(6) MOTION TO DISMISS**

**A.   Motions to Dismiss For Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of the claims in the complaint.   <u>Davis v. Monroe County</u>

<u>Bd. of Educ.</u>, 526 U.S. 629, 633 (1999).

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, . . .
> a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do . . . .  Factual
> allegations must be enough to raise a right to relief
> above the speculative level . . . .

<u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S. Ct. 1955, 1964-65

(2007) (citations omitted) (quoting and abrogating <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 47, (1957)).  Courts must accept as true all

material allegations in the complaint, as well as reasonable

inferences to be drawn from them, and must construe the complaint

in the light most favorable to the Plaintiff.  <u>Cholla Ready Mix,</u>

<u>Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v.</u>

<u>City of Burbank</u>, 352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch.</u>

<u>of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995);

<u>N.L. Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

The issue is not whether the plaintiff will "ultimately

prevail but whether the claimant is entitled to offer evidence to

support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

A dismissal under Rule 12(b)(6) is generally proper only where

there "is no cognizable legal theory or an absence of sufficient

facts alleged to support a cognizable legal theory." <u>Navarro v.</u>

<u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001); <u>Balistreri v. Pacifica</u>

<u>Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

The court need not accept conclusory allegations in the

complaint as true; rather, it must "examine whether [they] follow

from the description of facts as alleged by the plaintiff." <u>Holden</u>

1  v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation

2  omitted); Halkin v. VeriFone, Inc. (In re Verifone Sec. Litig.), 11

3  F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, 382 F.3d

4  at 973 (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55

5  (9th Cir. 1994)) (stating that on Rule 12(b)(6) motion, a court "is

6  not required to accept legal conclusions cast in the form of

7  factual allegations if those conclusions cannot reasonably be drawn

8  from the facts alleged[]").  "Nor is the court required to accept

9  as true allegations that are merely conclusory, unwarranted

10 deductions of fact, or unreasonable inferences."  Sprewell v.

11 Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

12      In addition, when resolving a motion to dismiss for failure to

13 state a claim, the court may not generally consider materials

14 outside the pleadings.  Schneider v. Cal. Dep't of Corrs., 151 F.3d

15 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire &

16 Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay

17 Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th

18 Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the

19 complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes

20 consideration of "new" allegations that may be raised in a

21 plaintiff's opposition to a motion to dismiss brought pursuant to

22 Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232,

23 236 (7th Cir. 1993); 2 James Wm. Moore et al., Moore's Federal

24 Practice § 12.34[2] (3d ed. 1997) ("The court may not . . . take

25 into account additional facts asserted in a memorandum opposing the

26 motion to dismiss, because such memoranda do not constitute

27 pleadings under Rule 7(a).").  These Rule 12 (b)(6) guidelines

28 apply to Defendants' Motion to Dismiss.

8

**B.    Standards Applicable to Pro Se Litigants**

Where a plaintiff appears in propria persona in a civil rights case, courts must construe the pleadings liberally and give the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a pro se civil rights complaint, however, the court may not "supply essential elements of claims that were not initially pled."  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  Jones, 733 F.2d at 649 (internal quotation omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Noll v. Carlson, 809 F.2d 1446, 1447 (9th Cir. 1987).  Thus, before a pro se civil rights complaint may be dismissed, the plaintiff must be provided with a statement of the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24.  Where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is

1    appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir.

2    2000).

3    **C.    Stating a Claim Under 42 U.S.C. § 1983**

4        To state a claim under § 1983, the plaintiff must allege facts

5    sufficient to show (1) a person acting under color of state law

6    committed the conduct at issue, and (2) the conduct deprived the

7    plaintiff of some right, privilege, or immunity protected by the

8    Constitution or laws of the United States.  42 U.S.C.A. § 1983

9    (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th

10   Cir. 1986).

11   **III. THE MERITS OF THE MOTION TO DISMISS FOR FAILURE TO STATE A**

12   **CLAIM**

13       Dodson makes seven claims against Defendants.  Count one

14   alleges that against Defendants Rocha, Swearingen, Mora, Canada,

15   Tamayo, Silva, Arani, Galvan, Ruan, Bell, and Barrios used

16   excessive force amounting to cruel and unusual punishment.  (Compl.

17   6-11.)  Count two claims that Defendants Mora, Arani, Galvan, Ruan,

18   Bell, Barrios, and "numerous John Doe [correctional officers] were

19   deliberately indifferent to Dodson's safety."  (Id. at 12.)  In

20   count three, Dodson states that his First Amendment right to free

21   speech was violated by Defendants Silva and Ruan.  (Id. at 13.)

22   Count four alleges a medical negligence claim against Defendant

23   Santiago.  (Id. at 14-17.)  Dodson alleges a claim for deliberate

24   indifference to a serious medical need against Defendant Nelson in

25   count five.  (Id. at 18.)  Count six asserts that Plaintiff endured

26   cruel and unusual punishment from the deprivation of minimal

27   measures of life's necessities by three unnamed defendants.  (Id.

28   at 19.)  In count seven, Dodson alleges that he suffered emotional,

07cv0869 W (RBB)

1  mental, and psychological injuries from the actions of all

2  Defendants.  (<u>Id.</u> at 20-23.)

3      Defendants Arani, Barrios, Bell, and Galvan move to dismiss

4  count one and, along with Defendant Mora, count two for failure to

5  state a claim against them.  (Defs.' Mem. of P. & A. 5-6.)

6  Defendant Silva moves to dismiss count three against him for

7  failure to state a claim for violating Dodson's First Amendment

8  right to free speech.  (<u>Id.</u> at 9.)  Defendant Santiago asks the

9  Court to dismiss count four for failure to state a medical

10 negligence claim.  (<u>Id.</u> at 10.)  Defendant Nelson moves to dismiss

11 count five for failure to state a claim of deliberate indifference

12 to Dodson's serious medical needs.  (<u>Id.</u> at 11.)  Although none of

13 the moving Defendants are named in count six, they purport to move

14 to dismiss the count against the Doe Defendants for deprivation of

15 Dodson's minimal measures of life's necessities.  (<u>Id.</u> at 12.)

16 These Defendants seek to dismiss count seven for failure to timely

17 file a government claim of negligent and intentional infliction of

18 emotional distress.  (<u>Id.</u> at 13.)

19 **A.**   **Plaintiff Fails to State a Claim of Excessive Force Amounting**

20      **to Cruel and Unusual Punishment Against Defendants Arani,**

21      **Barrios, Bell, Galvan and Ruan.**

22      Defendants Arani, Barrios, Bell and Galvan seek a dismissal

23 count one of Dodson's Complaint on the ground that Plaintiff fails

24 to state an Eighth Amendment claim against them for excessive force

25 amounting to cruel and unusual punishment.[2]  (Defs.' Mem. of P. &

26 _____

27      [2] Defendants Canada, Rocha, Silva, Swearingen, and Tamayo do
   not move to dismiss on this ground because they concede that the
28 Complaint states a claim against them, although they contest the
   factual allegations.  (Defs.' Mem. of P. & A. 5 n.2.)

A. 5.)  Dodson asserts that the officers acted "maliciously, sadistically, and with culpable intent for the very purpose of causing Petitioner harm . . . ."  (Compl. 11.)

A plaintiff claiming excessive force under the Eighth Amendment must "allege . . . the unnecessary and wanton infliction of pain . . . ."  Whitley v. Albers, 475 U.S. 312, 320 (1986).  "To survive the motion to dismiss, he is required to allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice of the type of claim being pursued."  Ortez v. Wash. County, 88 F.3d 804, 810 (9th Cir. 1996) (citing Jones v. Cmty. Redev. Agency, 733 F.2d at 649).

Count one alleges that Defendants Swearingen, Canada, Tamayo, Rocha, and Silva each used excessive force against Plaintiff. (Compl. 6-11.)  Plaintiff further alleges that Defendants Arani and Galvan were present when Dodson was escorted through the yard. (Id. at 8.)  Arani responded, "It's too late now man!" when Dodson asked, "Arani, you gone' [sic] let them do this to me man?"  (Id.) Arani then headed toward a building.  (Id.)  The only allegation made against Defendant Galvan is that, upon making eye contact with Dodson, she looked down and walked away.  (Id.)  Defendant Ruan spoke with Defendant Silva as Dodson was escorted to the MTA office.  (Id. at 9.)  Defendants Barrios and Bell subsequently left their post in the MTA office when ordered to "clear out" by Defendant Silva.  (Id.)  Later, they returned to tend to Dodson's more serious wounds, noting some but omitting others from their report.  (Id. at 10.)  After Dodson was beaten in the MTA office, Ruan approached and said, "Let me hear it?"  (Id. at 10.)  None of the allegations against these five Defendants -- Arani, Barrios,

Bell, Galvan, or Ruan -- demonstrate the commission of any overt acts resulting in unnecessary and wanton infliction of pain on Plaintiff.[3]

Dodson concedes that the behavior of these five defendants does not amount to cruel and unusual punishment. (Pl.'s Opp'n 3.) He indicates that he did not intend to assert claims of excessive force against these Defendants, instead alleging in count two that they were deliberately indifferent when they failed to protect him from the other Defendants. (Id.) For these reasons, the Motion to Dismiss the claim against Defendants Arani, Barrios, Bell and Galvan for excessive force amounting to cruel and unusual punishment should be **GRANTED** without leave to amend. Additionally, the Court should sua sponte dismiss the claim against Defendant Ruan without leave to amend.

**B.** **The Motion to Dismiss the Claim for Deliberate Indifference to Plaintiff's Safety Should be Denied as to Defendants Arani, Galvan, and Mora and Granted With Leave to Amend as to Defendants Barrios and Bell.**

Defendants Arani, Barrios, Bell, Galvan and Mora move to dismiss Plaintiff's second cause of action against them it fails to state a claim for deliberate indifference to Dodson's safety. (Defs.' Mem. of P. & A. 6.)

---

[3] It appears that Defendant Ruan has not been served with Plaintiff's Complaint and has not filed a responsive pleading in this action because he is deceased [doc. no. 14]. Although he is not a party to the Motion to Dismiss, the Court may sua sponte dismiss claims against him that are similar to those brought against the moving Defendants. Columbia Steel Fabrications, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995); see Ricotta v. California, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998).

To be found liable for an Eighth Amendment violation for deliberate indifference to an inmate's safety, a prison "official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A defendant's acts or omissions will not rise to the level of a constitutional violation unless there is a reckless disregard of the risk of serious harm to the prisoner. <u>Id.</u> at 836. The official must have "know[n] that [the] inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847. "It is not enough merely to find that a reasonable person would have known, or that the defendant should have known . . . ." <u>Id.</u> at 843 n.8. But, a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." <u>Id.</u>

### 1.   <u>Defendants Arani and Galvan</u>

After Dodson was beaten in his cell, he was escorted through the yard, where he spotted Arani. (Compl. 8.) Dodson asked Arani if he was going to let them "do this" to him, and Arani replied, "It's too late now man!" (<u>Id.</u>) Arani then headed toward a building, leaving Plaintiff with Defendants Canada and Tamayo. (<u>Id.</u>) Defendant Galvan looked down and walked away as Dodson was escorted through the yard. (<u>Id.</u>)

1   The Court must construe Dodson's Complaint in the light most
2   favorable to him and draw all reasonable inferences from it.
3   Cholla Ready Mix, 382 F.3d at 973 (citing Karam, 352 F.3d at 1192).
4   Using this standard, it is reasonable to infer that Arani's
5   statement indicated actual knowledge of a substantial risk to
6   Dodson.   Likewise, it can be inferred that Galvan, who was to
7   Arani's "immediate left," (Compl. 8), heard Arani's statement and
8   also knew of a substantial risk to Dodson.   Plaintiff is alleging
9   overt facts, not mere conclusory allegations against these
10  Defendants.   Whether Defendants actually perceived the significant
11  risk posed to Dodson is an issue appropriate for summary judgment
12  or trial, but this claim cannot be dismissed at the pleading stage.
13  See Varella v. Adams, No. 1:03-CV-06324-OWW-LJ-P, 2006 WL 2013478,
14  at *5 (E.D. Cal. July 17, 2006).   Dodson has alleged sufficient
15  facts to "raise a right to relief above the speculative level," see
16  Bell Atl. Corp., __ U.S. at __, 127 S. Ct. at 1965, so the Court
17  should deny Defendants Arani and Galvan's Motion to Dismiss.

18       2.   Defendants Barrios and Bell

19       Defendants Barrios and Bell complied when Defendant Silva told
20  them to "clear out!" of the MTA office.   (Id. at 9.)   Dodson fails
21  to allege facts that these medical technicians were aware of the
22  incident in Plaintiff's cell or that they had any other knowledge
23  from which they could infer that a substantial risk of harm to
24  Dodson existed.   Dodson entered the MTA office after the first
25  beating, and the facts alleged do not show that Defendants Barrios
26  or Bell knew that Dodson was at risk for additional harm.   In his
27  Opposition, Plaintiff argues that Barrios and Bell knew about the
28

previous incident by radio communication, and they witnessed Dodson

"being man-handled by Canada and Tomayo." (Pl.'s Opp'n 7.)

    The Court may not consider any new allegations or additional

facts asserted in a memorandum opposing the motion to dismiss. <u>See</u>

<u>Schneider</u>, 151 F.3d at 1197 n.1.  Nevertheless, the Court must give

a <u>pro</u> <u>se</u> litigant leave to amend his complaint unless it clearly

appears from the complaint that the deficiency cannot be overcome

by amendment. <u>Noll</u>, 809 F.2d at 1448.  Here, Defendants Barrios

and Bell's Motion to Dismiss should be granted with leave to amend.

    3.   <u>Defendant Mora</u>

    Mora placed Dodson in handcuffs after Plaintiff struck

Defendant Rocha in the face. (Compl. 6.)  Defendant argues that

Dodson fails to allege Mora "witnessed, participated in, or was

even present during the alleged incident either before or after he

placed Plaintiff in handcuffs." (Defs.' Mem. P. & A. 7.)  Again,

however, the Court must draw reasonable inferences in favor of

Dodson's Complaint. <u>See</u> <u>Cholla Ready Mix</u>, 382 F.3d at 973 (citing

<u>Karam</u>, 352 F.3d at 1192).  After being handcuffed by Mora,

Defendant Swearingen stepped in and started beating Dodson.

(Compl. 6.)  While the Complaint does not specify what Mora did

after placing Dodson in handcuffs, there is no suggestion that Mora

left, and it is reasonable to infer that he was present as

Defendant Swearingen stepped in.  The Court must give Plaintiff any

benefit of the doubt. <u>See</u> <u>Karim-Panahi v. Los Angeles Police</u>

<u>Dep't</u>, 839 F.2d at 623.  Defendant Mora's Motion to Dismiss should

be denied.

4.   Defendant Ruan

Defendant Ruan spoke with Defendant Silva as Dodson was escorted to the MTA office.  (Compl. 9.)  After Silva cleared the office and Dodson was allegedly beaten a second time, Ruan approached the entrance to the MTA office and said, "Let me hear it?"  (Id. at 10.)

These allegations do not demonstrate Ruan's knowledge that a substantial risk of serious harm to Dodson existed.  In fact, this exchange happened after the serious harm to Dodson had occurred. Plaintiff later claims that Defendant Ruan had knowledge of the situation because he was constantly briefed by Defendant Silva. (Pl.'s Opp'n 6.)  Once again, the Court cannot consider any new allegations presented outside of the pleadings.  See Schneider, 151 F.3d at 1197 n.1.  In his Complaint, Plaintiff fails to provide any facts that would show Defendant Ruan had any knowledge from which he could have drawn an inference that a substantial risk of harm to Dodson existed.

For the reasons set forth above, Defendants Arani, Galvan and Mora's Motion to Dismiss Dodson's deliberate indifference to safety claim against them should be **DENIED**.  Defendants Barrios and Bell's Motion to Dismiss the second cause of action should be **GRANTED** with leave to amend.  The Court should sua sponte dismiss the second cause of action against Defendant Ruan without leave to amend.

C.   **Plaintiff Fails to State a Claim that Defendants Silva and Ruan Retaliated Against Plaintiff in Violation of His First Amendment Rights.**

Dodson alleges in count three that Defendants Silva and Ruan used fear and intimidation to keep him from saying what was done to

17

him, effectively avoiding an internal investigation or subsequent disciplinary action.  (Compl. 13.)  Silva moves to dismiss on the ground that Plaintiff fails to state a claim against him for abridging Dodson's First Amendment right to free speech.  (Defs.' Mem. of P. & A. 9.)

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  Prisoners have a First Amendment right to free speech, Farrow v. West, 320 F.3d 1235, 1249 (11th Cir. 2003), and to petition the government.  Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).

The Constitution provides protections from "deliberate retaliation" by government officials for an individual's exercise of First Amendment rights.  See Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  See Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  Even so, there must be a causal connection between the allegedly retaliatory conduct and the action that provoked the retaliation; a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision" to act.  Soranno's Gasco, 874 F.2d at 1314 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Courts have noted that "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). As a result, these claims are reviewed with particular care. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

To withstand a motion to dismiss, a plaintiff suing prison officials pursuant to § 1983 for retaliation must allege facts that show the following:  (1) "[A] state actor took some adverse action against [the] inmate (2) because of (3) that prisoner's protected conduct, and . . . such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994)) (footnote omitted).  If the plaintiff's exercise of First Amendment rights was not chilled (factor four), he must allege that the defendant's actions caused him to suffer more than minimal harm.  Id. at 567-68 n.11.  But see Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that the test is objective -- whether official's acts would "chill or silence a person of ordinary firmness from future First Amendment activities[]").

Dodson contends that after he was beaten in the MTA office, Defendant Silva said, "It was all your fault and I better not hear anything different!"  (Compl. 10.)  Defendant Ruan then said, "Let me hear it?" to which Dodson responded, "It was all my fault."  (Id. at 10-11.)  Plaintiff states that he answered "these two officers" out of fear that saying anything else would lead to

19

retaliation.  (<u>Id.</u> at 13.)  These allegations fail to satisfy the factors set forth in <u>Rhodes</u>.

Dodson alleges that he did not exercise his First Amendment right to tell Ruan what actually happened because he feared retaliation if he did so.  (<u>Id.</u>)  He asserts that he "wanted to speak to a lawyer or someone not connected to the prison."  (<u>Id.</u>) But there is no allegation that he actually made this request for an attorney or that he faced any retaliation for making such a request.  There are no facts alleging retaliation for engaging in protected conduct.

Dodson's First Amendment claim also fails when the facts are applied to the test set forth in <u>Mendocino</u> -- whether an official's acts would "chill or silence a person of ordinary firmness from future First Amendment activities."  <u>Mendocino</u>, 192 F.3d at 1300. The <u>Mendocino</u> court explained:  "[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ."  <u>Id.</u>

Neither Silva's alleged threat nor Ruan's remark should deter a person of "ordinary firmness" from filing a prison grievance or civil rights suit.  Dodson exhausted administrative remedies and filed this lawsuit; both show that the actions of Silva and Ruan did not chill or silence Plaintiff's First Amendment activities. <u>See, e.g.</u>, <u>Lim v. Proulx</u>, No. 1:07-cv-01053-AWI-GSA-PC, 2008 WL 686118, at *3, *6 (E.D. Cal. Mar. 13, 2008) (holding plaintiff's protected speech was not chilled when he filed a grievance ten days after defendant told plaintiff he would be "eating concrete" if he ever told anyone about the incident).  <u>But see</u> <u>Hightower v.</u>

1   Schwarzenegger, No. 1:04-cv-06028-OWW-SMS PC, 2008 WL 752555, at *5

2   (E.D. Cal. Mar. 19, 2008) (finding valid retaliation claim stated

3   when defendant directed another inmate to make threats against

4   plaintiff after plaintiff filed a grievance against defendant).

5   For these reasons, Defendant Silva's Motion to Dismiss Dodson's

6   First Amendment right to free speech claims against him should be

7   **GRANTED** without leave to amend.  On the Court's motion, count three

8   against Defendant Ruan should be dismissed without leave to amend.

9   See Columbia Steel Fabricators, Inc., 44 F.3d at 802.

10      In his Opposition, Dodson makes a new allegation of

11  conspiracy.  (Pl.'s Opp'n 8.)  Conclusory allegations are

12  insufficient to demonstrate a conspiracy to deprive Plaintiff of

13  his First Amendment rights.  See Karim-Panahi, 839 F.2d at 626.

14  Plaintiff's belated assertion does not change the result.

15  Furthermore, a conspiracy to "cover up" an Eighth Amendment

16  violation raises different legal and factual issues from the

17  allegations in count three of Dodson's Complaint.  The Court may

18  not consider new allegations raised in a plaintiff's opposition to

19  a motion to dismiss brought pursuant to Rule 12(b)(6).  See

20  Schneider, 151 F.3d at 1197 n.1.

21  **D.    Plaintiff States a Claim Against Defendant Santiago**

22  **for Negligence in Providing Medical Care.**

23      In count four, Dodson alleges that Defendant Santiago was

24  negligent when he sutured Dodson's "teeth wound" contrary to "well

25  established medical doctrine that teeth wounds are to never be

26  sutured closed."  (Compl. 14.)  Defendant Santiago moves to dismiss

27  for failure to state a claim of negligence in providing medical

28

21

care.  (Defs.' Mem. of P. & A. 10.)[4]  "The elements of a cause of action in tort for professional negligence are:  (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  Budd v. Nixen, 6 Cal. 3d 195, 200, 491 P.2d 433, 436, 98 Cal. Rptr. 849, 852 (1971).

Dodson alleges facts that address all four elements.  First, he establishes Dr. Santiago's duty by stating that Santiago was employed at Calipatria State Prison where he was "assigned to carry out . . . the care of inmates."  (Compl. 5.)  Second, Plaintiff alleges that Santiago breached that duty when he sutured Dodson's hand, knowing the wound had been caused by a human bite.  (Id. at 14.)  According to Chief Medical Officer Dr. Levine, teeth wounds are "never, never . . . sutured."  (Id. at 16.)  Third, Dodson alleges that Santiago's act of suturing the wound was the proximate cause of his infection and that infections are "absolute" when a teeth wound is sutured.  (Id. at 14, 17.)  Nurse Doe "pleaded with" Dr. Santiago not to suture the wound; she subsequently administered a tetanus shot and antibiotics to Plaintiff.  (Id. at 14-15.)  Dr. Levine confirmed that Dodson's hand was infected and said that it never should have been sutured.  (Id. at 16.)  Fourth, Dodson

---

[4] Defendants' Memorandum of Points and Authorities also asks that "Defendant Levine" be dismissed from this claim.  (Defs.' Mem. Of P. & A. 10.)  Levine, however, is not named as a defendant in this lawsuit.  (See Compl. 2-5.)  Plaintiff also confirms that Levine is not a defendant.  (Pl.'s Opp'n 10 n.2.)

1   alleges that Santiago's negligence continued to cause "constant

2   pain and aches" after the infection was treated.  (Compl. 16.)  He

3   also alleges physical and mental suffering including loss of

4   appetite, weight loss, loss of sleep, and "other pains."  (Id. at

5   22.)

6        Defendant argues that Dodson's allegations amount to a

7   difference of medical opinion between Dr. Levine and Dr. Santiago,

8   and that expert testimony is required to show that a professional

9   duty of care has been breached.  (Defs.' Mem. of P. & A. 11.)

10  Although this may be true in order to survive a motion for summary

11  judgment, see Flowers v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal. 4th

12  992, 1001, 884 P.2d 142, 147, 35 Cal. Rptr. 2d 685, 690 (1994), it

13  is not required to survive a Rule 12(b)(6) motion to dismiss.

14  Instead, the Court does not decide whether Dodson will "ultimately

15  prevail but whether [he] is entitled to offer evidence to support

16  the claims."  Scheuer, 416 U.S. at 236.

17       In his Opposition, Dodson makes a new allegation that

18  Defendant Santiago was deliberately indifferent to his serious

19  medical needs.  (Pl.'s Opp'n 9.)  Because Plaintiff's Complaint

20  only purported to state a negligence claim against Dr. Santiago,

21  the Court may not consider this new deliberate indifference

22  allegation.  See Schneider, 151 F.3d at 1197 n.1.

23       Dodson alleges facts that address all elements of a medical

24  negligence claim.  Consequently, Defendant Santiago's Motion to

25  Dismiss Dodson's claim against him for negligence in providing

26  medical care should be **DENIED.**

27

28

**E.    Defendant Nelson's Motion to Dismiss For Failure to State a
       Claim of Deliberate Indifference to Plaintiff's Serious
       Medical Needs Should be Denied.**

Plaintiff contends in count five of his Complaint that
Defendant Nelson was deliberately indifferent to Plaintiff's
serious medical needs when he threw Dodson's antibiotics on the
ground and kicked them "all over the place."  (Compl. 15, 18.)
Nelson moves to dismiss for failure to state a claim against him
for deliberate indifference.  (Defs.' Mem. of P. & A. 11.)

Two elements comprise an Eighth Amendment claim for deliberate
indifference to serious medical needs.  Jett v. Penner, 439 F.3d
1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97,
104 (1976)).  "First, the plaintiff must show a 'serious medical
need' by demonstrating that 'failure to treat a prisoner's
condition could result in further significant injury or the
"unnecessary and wanton infliction of pain."' [Citation omitted.]
Second, the plaintiff must show the defendant's response to the
need was deliberately indifferent."  Id. (citing McGuckin v. Smith,
974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by
WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en
banc)).

"Examples of serious medical needs include '[t]he existence of
an injury that a reasonable doctor or patient would find important
and worthy of comment or treatment; the presence of a medical
condition that significantly affects an individual's daily
activities; or the existence of chronic and substantial pain.'"
Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)
(quoting McGuckin, 974 F.2d at 1059-60).

The second element, deliberate indifference, is pled if the prisoner alleges facts that show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.  To be found liable for an Eighth Amendment violation, a prison "official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted).  The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation.  Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105-06); Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1059).

A defendant's acts or omissions will not rise to the level of a constitutional violation unless there is a reckless disregard of the risk of serious harm to the prisoner.  Farmer, 511 U.S. at 836. The official must have "know[n] that [the] inmate[] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Id. at 847.

Dodson's injuries were first attended to by Defendants Barrios and Bell, who started dressing his more serious wounds and making note of some wounds and not others.  (Compl. 10.)  Dodson required further treatment from Dr. Santiago.  (Id. at 14.)  Two of the

wounds were half-inch cuts to his left hand, "apparently from the teeth of Officer Rocha." (Id.)  In addition to suturing the wounds, Dodson received a tetanus shot and antibiotics. (Id. at 14-15.)  These allegations are sufficient to establish that Dodson had a serious medical need, as his injuries were found to be "important and worthy of comment or treatment." See Lopez, 203 F.3d at 1131 (quoting McGuckin, 974 F.2d at 1059-60).

To satisfy the second element, Defendant Nelson must have known that Dodson faced a substantial risk of serious harm when he kicked Dodson's antibiotics "all over the place." (See Compl. 15.) Defendant claims that Dodson's Complaint is deficient because it fails to assert that Nelson confiscated the antibiotics, that the antibiotics were ruined, or that it was impossible to obtain replacements. (Defs.' Mem. P. & A. 12.)  The Court, however, must construe the pleadings liberally, give Dodson the benefit of any doubt, and make any reasonable inferences. See Karim-Panahi, 839 F.2d at 623; Cholla Ready Mix, 382 F.3d at 973 (citing Karam, 352 F.3d at 1192).

Defendant is correct that Dodson does not specifically allege Nelson ruined the antibiotics.  He does, however, say that Defendant Nelson "has no authority to . . . render medication useless." (Compl. 18.)  It is reasonable to infer from the Complaint that kicking the antibiotics all over the floor of the shower area rendered them useless.  Furthermore, Plaintiff alleges that he was placed in Ad-Seg where he was not given "anything at all in line with civilized measures of life's necessities for two days." (Id. at 16.)  This allegation is sufficient to include replacement medications.  Dodson's failure to more explicitly

assert that he did not obtain replacement medicine before being hospitalized does not make his claim deficient.  Dodson's hand became infected, (Compl. 16), supporting a reasonable inference that at least while in Ad-Seg, he did not have access to antibiotics.

For these reasons, Defendant Nelson's Motion to Dismiss Plaintiff's claim against him for deliberate indifference to a serious medical need should be **DENIED**.

**F.**   **The Claim That Unnamed Defendants Are Responsible for Unconstitutional Conditions of Confinement That Violated the Eighth Amendment Should Be Dismissed.**

In count six of his Complaint, Dodson alleges that three unidentified officers deprived him of "minimum measures of life's necessities" in violation of the Eighth Amendment when he was left Ad-Seg for two days dressed only in boxer shorts, without personal hygiene items, a mattress, sheets, or blankets.  (Compl. 19.)

To satisfy the requirements for an Eighth Amendment conditions-of-confinement claim, the prisoner must allege facts sufficient to show that a prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities" and that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  Farmer, 511 U.S. at 834, 836.  "The discrete basic human needs that prison officials must satisfy include food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (citing Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981));

see also Farmer, 511 U.S. at 832 (citations omitted) (containing a list of basic necessities).  Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of the "minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Wilson, 501 U.S. at 298 (reiterating the "minimal civilized measure of life's necessities" standard).

There is a constitutional obligation to provide prisoners with adequate shelter.  See Farmer, 511 U.S. at 832 (citations omitted). This includes protection from extreme cold.  See, e.g., Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000) (finding plaintiffs provided sufficient evidence of substantial deprivations of basic human needs when they were left, inadequately dressed, in subfreezing temperatures for five to nine hours); Gordon v. Faber, 973 F.2d 686, 687 (8th Cir. 1992) (finding prisoners' Eighth Amendment rights had been violated when they were required to stay outdoors in subfreezing temperatures for less than two hours, even though some were provided with lined denim coats and allowed to move about freely); McCray v. Burrell, 516 F.2d 357, 369 (4th Cir. 1975) (holding Eighth Amendment rights were violated when an inmate was confined to a cell for two days without clothing, a blanket or mattress).  Although the deprivation of a blanket or clothes other than boxer shorts may not violate the Eighth Amendment by itself, in some cases, the combination of the two may result in the deprivation of an identifiable human need, for example, the need for warmth.  See Wilson, 501 U.S. at 304.

Dodson alleges that he "froze all night long, shivering on cold metal steel with only boxer shorts on." (Compl. 19.)  He was

not provided with any mattress, sheets, blankets or clothing other than his boxer shorts.  (Id.)  Defendants argue that lack of clothing or blankets during a summer night and deprivation of these items for two nights does not amount to an Eighth Amendment violation.  (Defs.' Mem. of P. & A. 12.)  The Court does not resolve factual disputes, it only determines whether sufficient facts to "raise a right to relief above the speculative level," have been presented.  See Bell Atl. Corp., __ U.S. at __, 127 S. Ct. at 1965.

"In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice."  2 James Wm. Moore, et al., Moore's Federal Practice § 12.34[2], at 12-87 (3d ed. 2008) (footnote omitted).  The Court takes judicial notice that Calapatria State Prison, where Dodson was housed in August 2005, is located in Imperial County, California, a desert community.

To successfully allege an Eighth Amendment conditions-of-confinement claim, Dodson must show that the unidentified officers were deliberately indifferent to his needs by failing to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  See Farmer, 511 U.S. at 836.  Plaintiff must allege that the Defendants had actual knowledge of his basic human needs and deliberately refused to meet those needs.  Johnson, 217 F.3d at 734.

The officer who met Dodson in Ad-Seg told him he had to earn whatever he needed, and if he did not cause any problems, he would "get the things [he would] need."  (Compl. 19.)  Dodson was then

escorted to a cell with no mattress, sheets, blankets or clothes. (<u>Id.</u>)  When he asked about a mattress, the officer escorting him to the cell reiterated what the first officer told him, "You gotta earn it."  (<u>Id.</u>)  Dodson asked for some clothing; the officer responded, "You gotta earn that too!"  (<u>Id.</u>)  Plaintiff alleges that he spent the night "shivering on cold metal steel with only boxer shorts on."  (<u>Id.</u>)  In his Opposition, he seems to attribute the cold to the air-conditioning system, which he describes as "a blasting air vent blowing cold air." (Opp'n 15.)  The next morning, he asked a third officer if he could have some laundry, a mattress and some eating utensils.  (<u>Id.</u>)  The third officer told him to take it up with "3rd watch."  (<u>Id.</u>)

The facts alleged are that Defendants had actual knowledge of Dodson's need for a mattress, sheets, blankets and clothing, as he asked two officers for these items.  The officers are alleged to have deliberately refused these needs, telling Dodson that he had to earn them.  These assertions are insufficient to state an Eighth Amendment claim.

In <u>Hernandez v. Denton</u>, 861 F.2d 1421, 1424 (9th Cir. 1988), the court held that a claim that the inmate slept without a mattress for one night did not allege an Eighth Amendment violation.  Other courts agree.  <u>See</u> <u>O'Leary v. Iowa State Men's Reformatory</u>, 79 F.3d 82 (8th Cir. 1996) (finding that a program depriving inmate of underwear, blankets, a mattress, exercise or visits which he gradually regained with satisfactory behavior did not violate the Eighth Amendment).

None of the moving Defendants are named in Dobson's sixth claim for relief.  (Compl. 19.)  Instead, he is pursuing Doe

Defendants one through three.  (Id.)  Nevertheless, the Court may
dismiss the Complaint against Doe Defendants who have not appeared.
Columbia Steel Fabricators, Inc. v. Ahlstom Recovery, 44 F.3d at
802; see also Ricotta v. California, 4 F. Supp. 2d 961, 978-79.

For these reasons, Defendants' Motion to Dismiss count six of
Dodson's Complaint for deliberate indifference to his conditions of
confinement should be **GRANTED WITHOUT LEAVE TO AMEND**.

In his Opposition, Dodson makes a new allegation that the
unnamed defendants also violated his Fourteenth Amendment rights.
(Pl.'s Opp'n 13.)  As previously noted, the Court may not consider
new allegations raised in a plaintiff's opposition to a motion to
dismiss brought pursuant to Rule 12(b)(6).  See Schneider, 151 F.3d
at 1197 n.1.

**G.   Plaintiff's State Tort Causes of Action Should be Dismissed
      for Failure to Timely File a Government Claim.**

Dodson alleges in count seven that the physical injuries he
incurred resulted in "psychological and emotional negative
impacts."  (Compl. 20.)  Defendants Canada, Nelson, Silva, Tamayo,
Bell, Galvan, Rocha, and Swearingen construe this count as a claim
for negligent and intentional infliction of emotional distress and
move to dismiss it for failure to timely file a government claim.
(Defs.' Mem. of P. & A. 13, 15.)  But Plaintiff states that he is
not alleging a claim for negligent or intentional infliction of
emotional distress against the moving Defendants.  (Opp'n 17.)  It
appears that the allegations in count seven are a description of
damages for the preceding six counts.  (Compl. 20-23.)

When adjudicating a supplemental state law claim, this Court
must apply state substantive law.  United Mine Workers of Am. v.

07cv0869 W (RBB)

<u>Gibbs</u>, 383 U.S. 715, 726 (1966).  Under the California Tort Claims Act, the filing of a tort claim in the time and manner prescribed by statute is a prerequisite to filing a lawsuit against any state employee or agency.  <u>See</u> Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2 (West 2003).  Defendants assert that Dodson filed state tort claims only against Dr. Levine, who is not a defendant named in this action, and Defendant Dr. Santiago.  (Defs.' Mem. P. & A. 13; Jones Decl. ¶¶ 4,6, Ex. A.)  Dodson does not provide any evidence that he filed state tort claims against the other defendants. Plaintiff's Opposition states that he is not alleging negligent or intentional infliction of emotional distress against these defendants "at the state level."  (Pl.'s Opp'n 17.)  The only state law cause of action he intends to assert is the medical malpractice claim against Dr. Santiago.  (<u>Id.</u>)

For these reasons, the motion to dismiss supplemental state claims in count seven against Defendants Canada, Nelson, Silva, Tamayo, Bell, Galvan, Rocha, Swearingen, Barrios, Arani, and Ruan (sua sponte by the Court) should be **GRANTED** without leave to amend. The medical negligence or malpractice claim against Defendant Santiago remains pending; however, it appears to be duplicative of the claim alleged against Dr. Santiago in count four.

### V. PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

Dodson requests that the Court appoint counsel for him in this case for several reasons.  First, he cannot afford to hire a lawyer, and his family cannot afford to hire one on his behalf. (Dodson Decl. Supp. Mot. to Appoint Counsel 3-4.)  Second, the case will likely involve substantial discovery, and Plaintiff has limited access to witnesses.  (<u>Id.</u>)  Third, Dodson has limited

access to the prison law library, which impairs his ability to litigate the case. (Id. at 4.)  Fourth, Plaintiff asserts that the issues in the case are complex, and a lawyer would help him to properly apply the law. (Id.)  Finally, he has been unsuccessful in finding a lawyer to take his case. (Id.; Pl.'s Mem. Supp. Mot. to Appoint Counsel Exs. 1-11.)

There is no constitutional right in a civil action to effective representation of counsel. Nicholson v. Rushen, 767 F.2d 1426, 1427 (9th Cir. 1985).  There is also no constitutional right to appointed counsel to pursue a § 1983 claim. Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)); accord Campbell v. Burt, 141 F.3d 927, 931 (9th Cir. 1998).

> However, in "exceptional circumstances," a district court may appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(d). Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980).  To decide whether exceptional circumstances exist, a district court must evaluate both "'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'"  Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983)).

Rand, 113 F.3d at 1525.

Dodson argues that a lawyer can do a better job than a prisoner in conducting discovery, negotiating a settlement, and "performing other difficult tasks of litigation." (Pl.'s Mem. Supp. Mot. to Appoint Counsel 2.)  Although a pro se litigant might fare better with the assistance of counsel, this is not the test for appointment of counsel. Rand v. Rowland, 113 F.3d at 1525. Instead, Dodson "must show that because of the complexity of the claims he was unable to articulate his positions." Id.  Dodson

does not make this showing.  He has competently submitted papers to the Court throughout this action.  Although they are not as well written as what might have been prepared by an attorney, they adequately make Plaintiff's arguments and are organized.  <u>See</u> <u>id.</u>

Dodson next argues that appointment of counsel is appropriate when a substantial constitutional issue has been raised.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel 3.)  Plaintiff cites cases from the Second and Third Circuits as authority for his argument.  (<u>Id.</u> at 3).  The Ninth Circuit, however, follows a different standard, the "exceptional circumstances" standard, when determining whether to appoint counsel in a civil matter.  <u>See</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 155 (3d Cir. 1993).  This Court, therefore, is not required to appoint counsel whenever a constitutional issue of substance has been presented, but it must apply the "exceptional circumstances" test set forth in <u>Aldabe</u>.  <u>See</u> <u>Rand</u>, 113 F.3d 1520; <u>Aldabe</u>, 616 F.2d at 1093.

Dodson also argues that he needs appointed counsel because his ability to investigate the facts and conduct discovery is limited by his incarceration and the fact that he was transferred to another prison.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel 3.)  The need for discovery is not an exceptional circumstance.  <u>Wilborn</u>, 789 F.2d at 1331 ("[A] <u>pro se</u> litigant will seldom be in a position to investigate easily the facts necessary to support the case.")  Dodson's need to learn additional facts is no different than the needs of other <u>pro se</u> litigant, and is not an exceptional circumstance compelling the Court to appoint counsel.

Plaintiff contends that he should have appointed counsel because his law library access severely limits his ability to

34

07cv0869 W (RBB)

"learn the law and [keep] up with the litigation aspect of this case."  (Dodson Decl. Supp. Mot. to Appoint Counsel 4.)  "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977).  "The existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library."  Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985).  Prisoners, however, are not guaranteed unlimited access to the law library; access may be limited by time, manner, and place regulations.  Id.  Dodson does not make any showing that his limited law library access rises to the level of denying him meaningful access to the courts, nor does he give the Court any reason to conclude that his law library access amounts to an exceptional circumstance different from what other pro se litigants experience.

Plaintiff next argues that the need to cross-examine witnesses requires that the Court appoint counsel.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel 3-4.)  He cites cases from other circuits to support his contention.  (Id. at 4.)  Factual disputes and anticipated cross-examination of witnesses do not indicate the presence of complex legal issues warranting a finding of exceptional circumstances.  See Rand, 113 F.3d at 1525 (holding that while the appellant might have fared better with counsel during discovery and in securing expert testimony, "this is not the test[]").

1    Dodson explains that he has a general education and lacks

2  experience in the law, finding it intimidating and confusing;

3  consequently, it is difficult to present his case in a "clear and

4  precise" manner.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel 4.)

5  This is a common difficulty for litigants proceeding pro se and is

6  not an exceptional circumstance.  See Wood v. Housewright, 900 F.2d

7  1332, 1335-36 (9th Cir. 1990).

8    Dodson also argues that the Court must consider factors such

9  as the need for expert witnesses, difficulties finding and locating

10  witnesses, whether trial will be by jury, and the existence of

11  "state of mind" issues such as deliberate indifference when

12  determining whether appointment of counsel is appropriate.  (Pl.'s

13  Mem. Supp. Mot. to Appoint Counsel 5.)  He again cites to cases

14  from several other circuits that consider these factors.  (Id.);

15  see Tucker v. Randall, 948 F.2d 388, 391-92 (7th Cir. 1991)

16  (directing the district court to appoint counsel for a prisoner

17  using the Seventh Circuit's five-factor test.)

18    In the Ninth Circuit, however, the Court decides whether

19  exceptional circumstances exist by evaluating two factors:  "'the

20  likelihood of success on the merits [and] the ability of the

21  petitioner to articulate his claims pro se in light of the

22  complexity of the legal issues involved.'"  Wilborn, 789 F.2d at

23  1331 (quoting Weygandt, 718 F.2d at 954).

24    Even if this Court were to apply the Seventh Circuit test,

25  Dodson could not be appointed counsel at this time.  Unlike the

26  petitioner in Tucker, whose "inartful pleadings" and inability to

27  follow the briefing schedule convinced the court he was unable to

28  present his case, Dodson's papers have been generally articulate

36

1   and organized.   See Tucker, 948 F.2d at 392; see also Rand, 113

2   F.3d at 1525 ("Though [motions] did not achieve the quality of

3   papers that might have been prepared by a lawyer, Appellant's

4   papers were generally articulate and organized.").

5       Finally, Dodson notes that he has attempted to find an

6   attorney to represent him before petitioning the Court for

7   appointed counsel.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel 5.)

8   Courts have required that "indigent plaintiffs make a reasonably

9   diligent effort to secure counsel as a prerequisite to the court's

10  appointing counsel for them."  Bailey v. Lawford, 835 F. Supp. 550,

11  552 (S.D. Cal. 1993).  Dodson provides ten responses from various

12  attorneys and agencies rejecting his request for legal

13  representation.  (Pl.'s Mem. Supp. Mot. to Appoint Counsel Exs. 1-

14  10.)  Plaintiff has made a reasonably diligent effort to secure

15  counsel prior to petitioning for appointment of counsel.

16      Dodson has shown that he is capable of articulating his claims

17  pro se in light of the complexity of the issues involved.  At this

18  stage, it is too early for the Court to determine Dodson's

19  likelihood of success on the merits.  While he has adequately

20  stated his claims, without some evidence to support his assertions,

21  the Court cannot find that he is likely to succeed on the merits.

22  See Bailey, 835 F. Supp. at 552.  Dodson has failed to present any

23  exceptional circumstances that warrant appointment of counsel.

24  Therefore, his Motion for Appointment of Counsel is **DENIED**.

25                          **VI. CONCLUSION**

26      For the reasons stated above, Defendants' Motion to Dismiss

27  should be **GRANTED** in part and **DENIED** in part.  The Motion to

28  Dismiss count one against Defendants Arani, Barrios, Bell and

1   Galvan for excessive force amounting to cruel and unusual
2   punishment should be **GRANTED WITHOUT LEAVE TO AMEND**.  The Court
3   should sua sponte dismiss Defendant Ruan from this count without
4   leave to amend. Defendants Arani, Galvan, and Mora's Motion to
5   Dismiss the count two claim for deliberate indifference should be
6   **DENIED**.  The Motion to Dismiss the count two claim against
7   Defendants Barrios and Bell for deliberate indifference should be
8   **GRANTED WITH LEAVE TO AMEND**.  On the Court's motion, the second
9   count should also be dismissed against Defendant Ruan without leave
10  to amend.  Defendant Silva's Motion to Dismiss the count three
11  claim for violation of Dodson's First Amendment right to free
12  speech should be **GRANTED WITHOUT LEAVE TO AMEND**.  Sua sponte, the
13  Court should also dismiss the third count against Defendant Ruan
14  without leave to amend.  Defendant Santiago's Motion to Dismiss
15  count four alleging negligence in providing medical care should be
16  **DENIED**.  Defendant Nelson's Motion to Dismiss the count five claim
17  for deliberate indifference to a serious medical need should be
18  **DENIED**.  The Defendants' Motion to Dismiss the count six claim
19  against the Doe Defendants for deliberate indifference to Dodson's
20  conditions of confinement should be **GRANTED WITHOUT LEAVE TO AMEND**;
21  the claim is also dismissed sua sponte by the Court.  Count seven
22  fails to state a claim against Defendants Canada, Nelson, Silva,
23  Tamayo, Bell, Galvan, Rocha, Swearingen, Barrios, Arani, Mora, and
24  Ruan; the motion to dismiss the count against them should be
25  **GRANTED WITHOUT LEAVE TO AMEND.**  Dodson's Motion for Appointment of
26  Counsel is **DENIED.**
27      This Report and Recommendation will be submitted to the United
28  States District Court judge assigned to this case, pursuant to the

provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **July 7, 2008**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before **July 28, 2008**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


Dated: June 6, 2008

_____
Ruben B. Brooks
United States Magistrate Judge

cc:  Judge Whelan
     All Parties of Record