1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                 **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   TYUN SOCKEE DODSON,                  CASE NO:  07-CV-0869 W (RBB)

12                          Plaintiff,    **ORDER(1) ADOPTING REPORT &**
13                                        **RECOMMENDATION [DOC. NO.**
                                          **48]; (2) GRANTING IN-PART AND**
14        v.                              **DENYING IN-PART MOTION TO**
                                          **DISMISS [DOC. 25] AND (2)**
15                                        **DENYING MOTION FOR**
16   J. ROCHA, et al.,                    **APPOINTMENT OF COUNSEL**
                                          **[DOC. NO. 41]**
17                          Defendants.

18        On May 14, 2007, plaintiff Tyun Sockee Dodson, a state prisoner proceeding pro se

19   and in forma pauperis, filed this civil-rights lawsuit under 42 U.S.C. § 1983.  Although

20   Dodson is currently incarcerated at Corcoran State Prison, this lawsuit arises from events

21   that occurred while he was an inmate at Calipatria State Prison.

22        On October 24, 2007, defendants Bell, Canada, Galvan, Nelson, Rocha, Santiago,

23   Silva, Swearingen and Tamayo (collectively, "Defendants") filed a motion to dismiss the

24   Complaint.  (Doc. No. 25.)  On January 7, 2008, defendant Barrios filed a joinder to the

25   motion.  On February 15, 2008, defendants Arani and Mora also filed a joinder.

26        After briefing on Defendants' motion to dismiss was complete, Dodson filed a

27   motion for appointment of counsel (Doc. No. 41.)

28

On June 6, 2008, United States Magistrate Judge Ruben B. Brooks issued a Report and Recommendation ("Report" [Doc. No. 48]), recommending that the Court grant in-part and deny in-part Defendants' motion to dismiss, and deny Dodson's motion for appointment of counsel.  On July 21, 2008, Dodson filed objections to the Report.[1]  On July 28, 2008, Defendants filed a reply to Dodson's objections.  Defendants did not file any objections to the Report.

The matters being fully briefed, the Court decides the matter on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d.1).  For the reasons outlined below, the Court (1) **ADOPTS** the Report (Doc. No. 48), (2) **GRANTS IN-PART** and **DENIES IN-PART** Defendants' motion to dismiss (Doc. No. 25), and (3) **DENIES** Dodson's motion for appointment of counsel (Doc. No. 41).

## I.  BACKGROUND

The following facts are taken nearly verbatim from the Report, which in evaluating the motion to dismiss, was required to accept as true the Complaint's allegations.

On July 30, 2005, while incarcerated at Calipatria State Prison, Dodson was allegedly beaten by several correctional officers.  (*Compl.* at 1.)  The altercation began when defendant Rocha entered Dodson's cell to collect his previous cellmate's property.  (*Id.* at 6.)  After removing the property, Rocha reentered the cell holding his baton.  (*Id.*)  Dodson alleges Rocha was angry that Dodson's mother lodged a complaint against him, and Rocha allegedly said: "You wanna cry to your mommy, I'll give you something to cry about."  (*Id.*)  Dodson replied by saying, "whatever."  (*Id.*)  Rocha then swung his baton at Dodson, who lunged forward and punched Rocha in the face.  (*Id.*)

The alarm was triggered, and responding officers arrived.  (*Id.*)  Defendant Swearingen entered the cell and pepper sprayed Dodson, causing him to fall to the ground.

---

[1]Included in the objections was a request for leave to amend the complaint.  On August 6, 2008, Dodson withdrew his request in light of the Report's recommendation.  (See Doc. No. 55 at 1.)

1   (*Id.*)  After defendant Mora placed Dodson in handcuffs, defendants Swearingen, Canada,

2   and Tamayo allegedly beat Dodson with their batons while he was lying on his stomach.

3   (*Id.*)  Dodson crawled under his bunk after a blow to the head by Tamayo.  (*Id.* at 7.)

4   Tamayo then sat on Dodson's legs and twisted his left foot.  (*Id.*)  Canada struck Dodson's

5   shin with his baton.  (*Id.*)  Rocha grabbed Dodson's left pinky and ring fingers and beat his

6   left hand with a baton.  (*Id.*)  Defendant Silva placed his knee at the base of Dodson's neck,

7   covered his nose and mouth with plastic, and tried to break his neck or suffocate him.  (*Id.*)

8        The commotion caused other inmates in the building to yell for the correctional

9   officers to stop the abuse, although the view into Dodson's cell was blocked by the

10  officers.  (*Id.*)  Dodson was escorted from his cell by defendants Canada and Tamayo.  (*Id.*

11  at 8.)  When one of the other inmates asked, "You alright Sockee?", defendant Canada told

12  Dodson, "Tell him you're alright!", but Dodson said nothing.  (*Id.*)

13       Dodson was escorted outside in the dark where numerous other officers were

14  present.  (*Id.*)  Dodson had heard rumors that an inmate was beaten in front of the

15  building, and fearing the worst, he began searching for officers' name tags.  (*Id.*)  Dodson

16  saw defendant Arani with a "6 shooter block gun."  (*Id.*)  Dodson asked him, "Arani, you

17  gone' [sic] let them do this to me man?"  (*Id.*)  Arani replied, "It's too late now man!"  (*Id.*)

18  Dodson also saw defendant Galvan, who would not make eye contact with Dodson and

19  quickly walked away.  (*Id.*)

20       Defendants Canada and Tamayo escorted Dodson to the Medical Technician

21  Assistant's ("MTA") office.  (*Id.* at 8–9.)  Dodson noticed defendant Silva speaking with

22  defendant Ruan.  (*Id.* at 9.)  Once Dodson was inside the MTA office's holding cage, Silva

23  entered the cage and told defendants Bell and Barrios to "clear out," which they did.  (*Id.*)

24  Silva then asked, "You wanna hit my officers huh?  You piece of shit! . . .  Huh?  You little

25  bitch!"  (*Id.*)  Dodson responded, "He hit me first."  (*Id.*)  Silva then struck Dodson in the

26  face, causing him to lose consciousness.  (*Id.*)  When he regained consciousness, defendants

27  Canada and Tamayo were kicking Dodson as he lay on the floor.  (*Id.*)  Defendants Canada

28

1  and Tamayo then pulled Dodson up and held him while defendant Silva punched him in
2  the stomach. (*Id.*) Silva said, "You're not so though now are you? You little bitch!" (*Id.*)
3  Silvan then spit on Dodson. (*Id.*)

4      Dodson was stripped and searched for contraband, and then handcuffed by
5  defendant Tamayo. (*Id.* at 10.) Defendants Bell and Barrios returned and started attending
6  to Dodson's more serious wounds. (*Id.*) Bell and Barrios documented some, but not all,
7  of Dodson's injuries. (*Id.*) Silva then entered the room and said to Dodson, "It was all
8  your fault and I better not hear anyting different!" (*Id.*) Silva motioned to defendant Ruan,
9  who stopped short of the entrance and said, "Let me hear it." (*Id.*) Dodson responded,
10  "It was all my fault." (*Id.* at 10–11.)

11      Dodson was taken to the Outpatient Housing Unit ("OHU"). (*Id.* at 14.)
12  Defendant Santiago, a doctor, and an unnamed nurse treated him. (*Id.*) Santiago examined
13  Dodson's wounds and determined that the wound to his hand needed to be sutured. (*Id.*)
14  When Santiago asked Dodson how he got the wound, Officer Rowe yelled, "This is the
15  bastard that knocked out the officer's teeth you just saw in the other room!" (*Id.*) Dodson
16  had cut his hand on defendant Rocha's teeth. (*Id.*) Santiago sutured the wound, ignoring
17  the advice of the unnamed nurse not to suture it because it was a teeth wound. (*Id.*) The
18  nurse gave Dodson a tetanus shot and said that he would need antibiotics. (*Id.*)

19      Dodson was then escorted to a shower for pepper-spray decontamination. (*Id.* at
20  15.) While in the shower, defendant Nelson arrived to place Dodson in Administrative
21  Segregation ("Ad-Seg"). (*Id.*) At the same time, the nurse arrived to give Dodson his
22  antibiotics and began instructing him on how to take them. (*Id.*) Nelson yelled, "Get the
23  fuck out of here! He doesn't want your fucking meds!" (*Id.*) Nelson then threw the pills
24  to the ground at the nurse's feet. (*Id.*) When Dodson asked, "What's up with my
25  antibiotics?", Nelson kicked the pills, causing them to go "all over the place." (*Id.*)

26      Dodson was escorted to Ad-Seg, where he was held without a mattress, blanket,
27  eating utensils, or toiletries for two days. (*Id.* at 15–16.) Three days later, Dodson was

28

07cv0869W

1   examined by defendant Bell for complaints of a throbbing hand.  (*Id.* at 16.)  That evening,

2   Dodson had cold chills and was sweating all night.  (*Id.*)  Dodson was examined the next

3   day by Dr. Levine, who diagnosed him with an infection and told Dodson that the wound

4   should not have been sutured.  (*Id.*)  Dr. Levine milked the wound and admitted Dodson

5   to OHU, where he received intravenous medication for about four days.  (*Id.*)

6

7   **II.   <u>LEGAL STANDARD</u>**

8   **A.   <u>Review of Magistrate Judge's Report.</u>**

9           A district court's duties concerning a magistrate judge's report and recommendation

10  and a respondent's objections thereto are set forth in Rule 72(b) of the Federal Rules of

11  Civil Procedure and 28 U.S.C. § 636(b)(1).  The district court "must make a de novo

12  determination of those portions of the report . . . to which objection is made," and "may

13  accept, reject, or modify, in whole or in part, the findings or recommendations made by

14  the magistrate."  28 U.S.C. § 636(b)(1)(C); <u>see also</u> <u>United States v. Remsing</u>, 874 F.2d 614,

15  617 (9th Cir. 1989); <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980).

16          When no objection is made, however, the district court is not required to review the

17  report and recommendation.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th

18  Cir. 2003)(holding that 28 U.S.C. 636(b)(1)(c) "makes it clear that the district judge must

19  review the magistrate judge's findings and recommendations de novo *if objection is made,* but

20  not otherwise")(emphasis in original); <u>Schmidt v.  Johnstone</u>, 263 F. Supp. 2d 1219, 1226

21  (D. Arizona 2003) (concluding that where no objections were filed, the District Court had

22  no obligation to review the magistrate judge's report).  This rule of law is well established

23  within the Ninth Circuit and this district.  <u>See</u> <u>Wang v. Masaitis</u>, 416 F.3d 992, 1000 n. 13

24  (9th Cir. 2005)("Of course, de novo review of a R & R is ***only*** required when an objection

25  is made to the R & R.")(emphasis added)(citing <u>Renya-Tapia</u>, 328 F.3d 1121); <u>Nelson v.</u>

26  <u>Giurbino</u>, 395 F. Supp. 2d 946, 949 (S.D. Cal. 2005) (Lorenz, J.) (adopted Report without

27  review because neither party filed objections to the Report despite the opportunity to do

28

1  so, "accordingly, the Court will adopt the Report and Recommendation in its entirety.");

2  see also Nichols v. Logan, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004) (Benitez, J.).

3

4      **B.    Motion to Dismiss.**

5          The court must dismiss a cause of action for failure to state a claim upon which

6  relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests

7  the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578,

8  581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are

9  assumed to be true. Id. The court must assume the truth of all factual allegations and must

10 "construe them in the light most favorable to the nonmoving party." Gompper v. VISX,

11 Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle,

12 83 F.3d 1575, 1580 (9th Cir. 1996).

13         As the Supreme Court recently explained, "[w]hile a complaint attacked by a Rule

14 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

15 to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

16 conclusions, and a formulaic recitation of the elements of a cause of action will not do."

17 Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the

18 complaint "must be enough to raise a right to relief above the speculative level." Id. at

19 1964–65. A complaint may be dismissed as a matter of law either for lack of a cognizable

20 legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter

21 Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). Generally, the court may not consider

22 material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios,

23 Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court

24 may consider any documents specifically identified in the complaint whose authenticity is

25 not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995).

26 Moreover, the court may consider the full text of those documents, even when the

27 complaint quotes only selected portions. Id. The court may also consider material

28

properly subject to judicial notice without converting the motion into a motion for summary judgment.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

## III.   DISCUSSION

Having read and considered the Complaint, the Report, Dodson's objections, and Defendants' reply, the Court finds that the Report presents a well-reasoned analysis of the issues.  Accordingly, the Court will accept the Report's recommendations.

### A.     Defendant Ruan.

According to the docket, defendant Ruan is deceased and was not served with the summons and complaint prior to his death.  (See Doc. No. 14.)  Additionally, the Report recommends dismissing Ruan because the Complaint fails to state a claim against him.

Dodson does not object to the Report's findings and recommendation regarding Ruan.   The Court, therefore, adopts Judge Brooks' analysis and recommendation, and dismisses all claims against defendant Ruan.

### B.     Uncontested Recommendations.

Defendants did not file objections to the Report.  Accordingly, the Court adopts the Report's analysis and recommendation regarding the following issues:

1.   Dodson has stated a claim against defendants Arani, Galvan and Mora for deliberate indifference to Dodson's safety.  Arani, Galvan and Mora's motion to dismiss Count 2 is, therefore, denied;

2.   Dodson has stated a claim against defendant Santiago for medical negligence. Santiago's motion to dismiss Count 4 is, therefore, denied; and

07cv0869W

3.   Dodson has stated a claim against defendant Nelson for deliberate indifference to Dodson's serious medical needs.  Nelson's motion to dismiss Count 5 is, therefore, denied.

Additionally, although Dodson filed objections to the Report, he did not object to the following recommendations:

1.   Grant, without leave to amend, defendants Arani, Barrios, Bell and Galvan's motion to dismiss the first cause of action for cruel and unusual punishment; and

2.   Grant, without leave to amend, defendant Silva's motion to dismiss the third cause of action for violation of Dodson's first amendment right to free speech;

Accordingly, the Court also accepts these recommendations, and adopts the Report's analysis on these issues claims.

**C.   Dodson Failed to State a Claim Against Defendants Bell and Barrios for Deliberate Indifference to Dodson's Safety .**

To state an Eighth Amendment claim for deliberate indifference to an inmate's safety, a plaintiff must establish that the prison official is "both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In short, the official must have "know[n] that [the] inmate face[d] a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." Id. at 847.  "It is not enough merely to find that a reasonable person would have known, or that the defendant should have known. . . ." Id. at 843, n.8.

The allegations relevant to Dodson's claim against medical technicians Bell and Barrios are as follows.  Dodson alleges that after the initial incident, he was taken to "the MTA's office.  Once inside we entered the holding cage.  Sgt. Silva comes in, as he enters the holding cage he yells 'CLEAR OUT!' to MTA's [sic] Bell and Barrios.  They immediately comply, abandoning their post and duties, showing deliberate indifference as

- 8 -

07cv0869W

1  they scurried to the door, securing it behind them, failing to protect me and my health."
2  (*Compl.* 9.)   After Bell and Barrios left the office, Dodson alleges that other defendants
3  proceeded to beat him.  (*Id.* 9–10.)

4      Based on these allegations, the Report found that Dodson failed to allege facts
5  demonstrating that Bell and Barrios were aware of the incident in Dodson's cell or that
6  they had any other knowledge that should have alerted them that Dodson faced a
7  substantial risk of harm.  Dodson challenges this finding, urging that the claim is supported
8  by: 1) the "manner in which we arrived into the medical office gave notice of the
9  seriousness at hand."; 2) the proximity of the holding cage to the MTA's office; 3) because
10  Bell and Barrios left the office and shut the door after defendant Silva yelled "clear out";
11  and 4) because it is not normal for medical staff to leave their post in response to an order
12  to "clear out." (*Obj.* at 4–5.)

13      But as the Report points out, Dodson's argument relies on factual allegations
14  outside the complaint that the Court may not consider in evaluating the motion to dismiss.
15  See Schneider v. Cal. Dep't fo Corrs., 151 F.3d 1194, 1197, n.1 (9th Cir. 1998).  For
16  example, there are no factual allegations in the Complaint relating to the holding cage's
17  proximity to the MTA's office, or about the custom and practice of medical staff in
18  responding to orders by correctional officers.  And, as the Report correctly points out,
19  there are no factual allegations that even suggest Bell and Barrios had reason to know about
20  the incident in Dodson's cell.

21      In short, Dodson's claim against defendants Bell and Barrios is essentially based on
22  the allegation that they left the office and shut the door in response to defendant Silva's
23  order to "clear out."  This allegation is insufficient to support a claim that Bell and Barrious
24  knew that Dodson faced a substantial risk of serious harm.  Accordingly, the Court accepts
25  the Report's recommendation to grant, with leave to amend, Bell and Barrios' motion to
26  dismiss the Count 2.

27

28

07cv0869W

**D.** **Dodson Failed to State a Claim for Cruel and Unusual Punishment for Deprivation of Minimal Measures of Life's Necessities.**

In Count 6, Dodson sued unidentified doe defendants for cruel and unusual punishment in violation of the Eighth Amendment for allegedly depriving Dodson of "minimal measures of life's necessities." This claims was based on Dodson's contention that while in Ad-Seg, correctional-officer doe defendants refused to provide him with a mattress, sheets, blankets and clothing. Dodson alleges that when he requested these items, the officers responded by stating that "he had to earn whatever he needed, and that if he did not cause any problems, he would 'get the things [he would] need.'" (*Rpt.* at 29, citing *Compl.* at 19.)

The Report recommends dismissing this claim based on two cases: Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988), where the Ninth Circuit held that a claim that the inmate slept without a mattress for one night did not allege an Eighth Amendment violation; and O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82 (8th Cir. 1996), which found that depriving an inmate of underwear, blankets, a mattress, exercise or visits until he regained the items with satisfactory behavior did not violate the Eighth Amendment.

In his Objection, Dodson does not object to the Report's analysis of this claim. Instead, Dodson states that he now understands that he asserted the wrong cause of action, and that he should have filed a claim for retaliation. Dodson , therefore, requests leave to amend the complaint to allege the correct claim.

Because Dodson does not disagree with the Report's finding, the Court accepts the recommendation to dismiss without leave to amend the claim for cruel and unusual punishment in violation of the Eighth Amendment for allegedly depriving Dodson of "minimal measures of life's necessities."[2]

---

[2]To the extent Dodson believes he has a retaliation claim, nothing in this Order should be construed as precluding him from including that claim in his first amended complaint.

07cv0869W

1      **E.      Any State-law Claims for Emotional Distress are Dismissed.**

2              Count 7 in the Complaint is entitled "Emotional, and Mental/Psychological

3      Injuries."  Based on this title, Defendants construed the claim as a state-law based claim

4      for negligent and intentional infliction of emotional distress.  And because Dodson did not

5      allege and provided no evidence that he complied with the California Tort Claims Act,

6      Government Code § 911.2 *et seq.*, the Report recommends dismissing the claim.

7              In his Objection, Dodson states that he was not attempting to assert state-law claims

8      for negligent and intentional infliction of emotional distress.  (*Obj.* at 9.)  Rather, Dodson

9      contends that he is pursuing damages for mental injuries under his federal claims.

10     Defendants did not raise the issue of whether Dodson is entitled to damages under his

11     federal claims, and the Report did not recommend dismissing such damages.  Rather, the

12     Report correctly found that to the extent Dodson was attempting to assert state-law claims,

13     they must be dismissed because he failed to comply with the Tort Claims Act.

14     Accordingly, Dobson's objection lacks merit.

15

16

17     **IV.    APPOINTMENT OF COUNSEL**

18             Dodson requests appointment of counsel.

19             As the Report correctly points out, there is no constitutional right to appointment

20     of counsel in a civil case.  United States v. 30.64 Acres of Land, 795 F.2d 796, 801 (9th Cir.

21     1986).  Nor is there a constitutional right to appointed counsel to pursue a section 1983

22     claim.  Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997).

23             However, courts have discretion to request volunteer counsel for indigent plaintiffs

24     under exceptional circumstances.  28 U.S.C. § 1915(e); Wood v. Housewright, 900 F.2d

25     1332, 1335 (9th Cir. 1990).  While courts may request volunteer counsel in exceptional

26     cases, it has no power to make a mandatory appointment.  Mallard v. United States District

27     Court for Southern District, 490 U.S. 296, 301-308 (1989).

28

1   To determine whether exceptional circumstances exist, courts evaluate the plaintiff's
2   likelihood of success on the merits and the ability of the plaintiff to articulate his claim *pro*
3   *se* in light of the complexity of the legal issues.  Richards v. Harper, 864 F.2d 85, 87 (9th
4   Cir. 1988); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  However, neither of
5   these factors are dispositive and both must be viewed together before reaching a decision
6   on request of counsel under [former] section 1915(d)."  Willborn v. Escalderon, 789 F.2d
7   1328, 1331 (9th Cir. 1986); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).

8   Here, the Report recommends at this time denying Dodson's request for counsel
9   because (1) he has demonstrated the ability to articulate his claims, and (2) it is currently
10  difficult to evaluate the merits of Dodson's claims.  The Court agrees.

11  Dodson objects, however, and contends that counsel is needed because Defendants
12  have retaliated against him by perjuring themselves in front of the Imperial County Grand
13  Jury.  Assuming this allegation is true, Dodson fails to explain how Defendants' perjury
14  before the grand jury relates to his ability to articulate his claims in this case, and the
15  likelihood that Dodson will succeed in this case.

16  For the foregoing reasons, the Court adopts the Report's recommendation and
17  denies Dodson's motion for appointment of counsel at this time.

18

19  **V.   CONCLUSION AND ORDER**

20  For the reasons stated above, the Court **ADOPTS** the findings contained in the
21  Report (Doc. No. 48), **GRANTS IN-PART** and **DENIES IN-PART** Defendants'
22  motion to dismiss (Doc. No. 25), **DENIES** the motion for appointment of counsel (Doc.
23  No. 41), and **ORDERS** as follows:

24         1.  Defendant Ruan is dismissed with prejudice.

25         2.  Plaintiff Dodson's 1st Count for use of excessive force amounting to
26            cruel and unusual punishment is **dismissed without leave to amend**
27            **as to Defendants Arani, Barrios, Bell, and Galvan.**

28

07cv0869W

3.      Plaintiff Dodson's 2nd Count for deliberate indifference to Dodson's safety is **dismissed with leave to amend as to Defendants Bell and Barrios.**  Defendants Arani, Galvan and Mora's motion to dismiss this count is denied.

4.      Plaintiff Dodson's 3rd Count for retaliation in violation of Dodson's First Amendment rights is **dismissed without leave to amend as to Defendant Silva.**

5.      Defendant Santiago's motion to dismiss Count 4 for medical negligence is denied.

6.      Defendant Nelson's motion to dismiss Count 5 for deliberate indifference to Dodson's serious medical needs is denied.

7.      Plaintiff Dodson's 6th Count for cruel and unusual punishment in violation of the Eighth Amendment for deprivation of minimal measures of life's necessities is **dismissed without leave to amend.**

8.      To the extent Dodson's 7th Count seeks to assert state-law claims for negligent and intentional infliction of emotion distress, **the state-law claims are dismissed without leave to amend.**

Any first amended complaint must be filed by Dodson on or before **October 28, 2008.**


**IT IS SO ORDERED.**

DATED:  September 11, 2008

_____
Hon. Thomas J. Whelan
United States District Judge

07cv0869W